UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

PHILIP GRANT

                                       Plaintiff,

               -against-

CITY OF NEW YORK, DETECTIVE EVELIN
GUTIERREZ, DETECTIVE NIURCA QUINONES
SHIELD #3310, DETECTIVE MARIBEL ROMAN
SHIELD #5530, AND LIEUTENANT COMMANDER
PATRICK MONTAGANO,

                                Defendants.

-------------------------------------------------------------------- x

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

15CV3635 (ILG)(ST)

## PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiff seeks relief through 42 U.S.C. §1983 for the violation of his Fourth and Fourteenth Amendment rights in addition to violations of the laws and Constitution of the State of New York.

2. The claim arises from a September 3, 2013 incident in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully denied plaintiff due process and subjected plaintiff to, among other things, false arrest, false imprisonment, and malicious prosecution.

3. Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution

of the State of New York.

5. The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

<u>VENUE</u>

6. Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

<u>PARTIES</u>

7. Plaintiff resided at all times here relevant in Kings County, City and State of New York.

8. The City of New York ("City") is a municipal corporation organized under the laws of the State of New York.  At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

9. Defendant police officers were, at all times here relevant, police officers of the NYPD, and as such were acting in the capacity of agents, servants and employees of the City of New York.

10.   On information and belief, at all times relevant hereto, defendant officers were involved in the decision to arrest plaintiff without probable cause or failed to intervene in

2

the actions of their fellow officers when they observed them arresting plaintiff without probable cause.

11.    On information and belief the defendant officers were involved in denying plaintiff due process or failed to intervene in the actions of their fellow officers when they observed them denying plaintiff due process.

12.    On information and belief, at all times relevant hereto, defendant officers were under the command of the Brooklyn Special Victims Squad and are sued in their individual capacity.

13.    At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## NOTICE OF CLAIM

14.    Within 90 days of the events giving rise to these claims, plaintiff filed written notices of claim with the New York City Office of the Comptroller.  Over 30 days have elapsed since the filing of those notices, and this matter has not been settled or otherwise disposed of.

## FACTUAL ALLEGATIONS

15.    On August 27, 2013, at approximately 2:45AM a woman ("Jane Doe") was followed by an unknown male as she walked down Evergreen St. in Brooklyn.  She tried to run but the attacker eventually caught up and threw her to the ground.  The attacker tried to remove her underwear but was unsuccessful.  Instead, he took Jane Doe's backpack and fled.  Jane Doe went home and reported the incident to the police.

16.    Jane Doe provided a description to the police of a male black with dark skin,

large deformed teeth, thin build, 5'6'' to 5'8'' inches tall, 150-170lbs, 30 to 40 years old, wearing a black hooded sweatshirt, black sweatpants and white socks.

17.    Over several days after the incident, Jane Doe and the officers drove around the neighborhood to look for the attacker.  No one was identified.  The defendant officers also obtained video surveillance from several stores in the area.  One video showed Jane Doe being chased by a man with a hood pulled over his head.  A sketch and wanted poster was generated and distributed to local stores.

18.    One local store owner said the sketch looked like a "bum" that comes into the stores on mornings and is approximately 30 years old.

19.    During their canvass of the area, the defendant officers spoke with a woman who was homeless and stays in an abandoned house on Lexington Ave.  The defendant officers asked if the woman knew a tall male black with a thin build and a bit muscular in the area.  The woman responded "that could be Phil" and pointed to 11 Stanhope St where plaintiff lives.

20.    On September 3, the defendant officers put plaintiff's photo in an array and showed it to Jane Doe.  She did not identify him as her attacker.

21.    Immediately after viewing the photo array, the defendant officers brought Jane Doe to the location of the attack and had her retell the story of what happened.  The officers then began to drive around the area with Jane Doe looking for suspects when they received a call from another officer to bring Jane Doe to 11 Stanhope St.  The officers immediately drove there.

22.    Mr. Grant was sitting on his front stoop at 11 Stanhope St. when the defendant officers jumped out of an unmarked car and placed him under arrest.  The officers then

conducted a search of his home while Mr. Grant remained handcuffed outside. Eventually the officers placed him inside a police car and took him to the precinct.

23.    Mr. Grant is a 59 year old man who has lived in Brooklyn most of his life.  He is 6'5'' tall and weighs 180lbs.  He walks with a very noticeable limp after a knee injury many years ago.  He cannot run.

24.    At the precinct, Mr. Grant was interrogated by the defendant officers.  He was shown a clip of video surveillance depicting a female walking and a male in a hooded sweatshirt following behind her.  The officers repeatedly berated Mr. Grant to admit that it was him in the video.  Mr. Grant denied the male in the video was him.

25.    While in the custody of the defendants, plaintiff complained of pain he felt in his ribs.  He explained that approximately one week earlier he had been attacked and beaten by two men near his home.  He had reported that incident to the police but no arrests were made.

26.    Defendants continued their relentless interrogation of defendant which included one detective claiming she didn't think Mr. Grant committed the crime; if he would just explain that he saw the victim on the night of the incident she would make sure he was released.  Mr. Grant told the defendant if she wrote a statement he would sign it.  The statement claims that Mr. Grant saw "the white girl" while he was fleeing from his attackers.  Mr. Grant signed it, hoping that if he did what he was told he could go home.

27.    The statement is not a confession and was clearly coerced considering plaintiff was attacked on August 25 but the victim was attacked on August 27.

28.    Mr. Grant was eventually taken through central booking and before a Judge.  He learned he was being charged with the sexual assault of Jane Doe.  Bail was set and Mr.

Grant was sent to Rikers Island.

29.     On November 27, the Office of Chief Medical Examiner concluded it's testing of DNA swabs taken from Jane Doe's shirt, underwear and backpack. The testing excluded plaintiff has the DNA donor. Defendant Officer Montagano received the DNA results and failed to properly present them to the prosecuting authorities.

30.     Seven months later, the court reduced Mr. Grant's bail and his family was finally able to post it. Mr. Grant was released from custody on April 8, 2014.

31.     On July 25, 2014, the Kings County District Attorney dismissed all charges claiming they could not prove the case beyond a reasonable doubt.

32.     At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff.

33.     During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

DAMAGES

34.     As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

    a.      Violation of his rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable search and seizure of their persons;

6

b.      Violation of his rights pursuant to the Fourteenth Amendment of the United States Constitution to due process;

c.      Violation of his New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

d.      Violation of his New York State Constitutional rights under Article 1, Section 6 to due process;

e.      Physical pain and suffering;

f.      Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

g.      Loss of liberty;

<u>FIRST CAUSE OF ACTION</u>
42 U.S.C. § 1983
False Arrest

35.    The above paragraphs are here incorporated by reference.

36.    Defendants acted under color of law and conspired to deprive plaintiff of his civil, constitutional and statutory rights to be free from unreasonable search and seizure, and to due process of law pursuant to the Fourth and Fourteenth Amendments to the United States Constitution and are liable to plaintiff under 42 U.S.C. §1983.

37.    Defendants arrested plaintiff without probable cause to believe he had committed a crime.

38.    Plaintiff has been damaged as a result of defendants' wrongful acts.

<u>SECOND CAUSE OF ACTION</u>
42 U.S.C. §1983
Due Process

39.    The above paragraphs are here incorporated by reference.

40.   Defendants acted under color of law and conspired to deprive plaintiff of his civil, constitutional and statutory rights to be free from unreasonable search and seizure, and to due process of law pursuant to the Fourth and Fourteenth Amendments to the United States Constitution and are liable to plaintiff under 42 U.S.C. §1983.

41.   Among other acts described above, defendants conducted suggestive identification procedures and coerced both the witnesses and the plaintiff and withheld DNA evidence from the prosecuting authority thereby denying plaintiff of due process.

42.   Plaintiff was damaged as a result of the defendants' wrongful acts.

THIRD CAUSE OF ACTION
Malicious Prosecution

43.   The above paragraphs are here incorporated by reference.

44.   Defendants, acting with malice, initiated a prosecution against plaintiff and caused him to be prosecuted.

45.   The criminal proceedings were terminated favorably to defendant.

46.   As a direct and proximate result of the misconduct and malicious prosecution detailed above, plaintiff sustained the damages described above.

FOURTH CAUSE OF ACTION
Municipal Liability 42 U.S.C. §1983

47.   The above paragraphs are here incorporated by reference.

48.   The City is liable for the damages suffered by plaintiff as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

49.   The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case.

50.   The aforesaid event was not an isolated incident.  The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of his police officers use excessive force, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of his fellow officers.  Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

51.   For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected.  The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them.  In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB.  The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations

to the NYPD, once finding misconduct by an officer.

52. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which Commissioner Kelly has done on many occasions.

53. Further, the City has no procedure to notify individual officers or his supervisors of unfavorable judicial review of his conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated his law department from the discipline of police officers, so that civil suits against police officers for actions taken in his capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.

54. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiff's civil rights, without fear of reprisal.

55.    Plaintiff has been damaged as a result of the deliberate indifference of the City to the constitutional rights of the City's inhabitants.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A.    In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B.    Awarding plaintiff punitive damages in an amount to be determined by a jury;

C.    Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D.    Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

| | |
|---|---|
| Dated: May 27, 2016<br><br>To:<br>City of New York<br>Detective Quinones<br>Detective Roman<br>Detective Gutierrez<br>Office of Corporation Counsel<br>100 Church St.<br>New York, NY 10007<br><br>Lieutenant Commander Patrick Montagano<br>Brooklyn Special Victims Squad<br>653 Grand Avenue<br>Brooklyn, NY 11238 | Respectfully,<br><br>_Nicole Bellina_<br>Nicole Bellina<br>Stoll, Glickman & Bellina, LLP<br>Attorneys for Plaintiff<br>475 Atlantic Ave. Fl.3<br>Brooklyn, NY 11217<br>718 852 3710 |