UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

PHILIP GRANT

                                Plaintiff,

                -against-

CITY OF NEW YORK, DETECTIVE EVELIN
GUTIERREZ, DETECTIVE NIURCA QUINONES
SHIELD #3310, DETECTIVE MARIBEL ROMAN
SHIELD #5530, AND LIEUTENANT COMMANDER
PATRICK MONTAGANO,

                             Defendants.

---------------------------------------------------------------------- x

MEMORANDUM OF LAW IN
RESPONSE TO
DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

15CV3635 (ILG)(ST)

# TABLE OF CONTENTS

PRELIMINARY STATEMENT………………………………………………………   1

STATEMENTS OF FACTS………………………………………………………...   1

ARGUMENT………………………………………………………………………..   5

SUMMARY JUDGMENT IS NOT WARRANTED AS THERE ARE GENUINE   5
ISSUES OF MATERIAL FACT……………………………………………………
POINT ONE   6

    A JUROR COULD RATIONALLY FIND THAT PLAINTIFF WAS   6
    SUBJECTED TO FALSE ARREST……………………………………………
POINT TWO…………………………………………………………………………..   14

    A JUROR COULD RATIONALLY FIND THAT PLAINTIFF WAS DENIED   14
    HIS RIGHT TO A FAIR TRIAL………………………………………………..
    A.  Fabricated Evidence………………………………………………………..   15

    B.  Fabricated Evidence Likely to Influence Jury……………………………   18

    C.  Deprivation of Liberty……………………………………………………   19

POINT THREE………………………………………………………………………   20

    A JUROR COULD RATIONALLY FIND THAT PLAINTIFF WAS   20
    SUBJECTED TO MALICIOUS PROSECUTION……………………………
    A.  Initiation or Continuation of the Proceeding………………………………   20

    B.  Lack of Probable Cause……………………………………………………   23

    C.  Malice……………………………………………………………………...   24

POINT FOUR………………………………………………………………………   25

    DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY……….   25

CONCLUSION………………………………………………………………………..   28

## PRELIMINARY STATEMENT

Philip Grant spent eight months in jail for a crime he did not commit.  He brings this action under 42 USC §1983 for a violation of his civil rights guaranteed under the 4th and 14th Amendments and related state law claims.  The defendants, particularly Detectives Roman, Gutierrez and Quinones, seized him without cause, fabricated evidence against him and maliciously prosecuted him.

Plaintiff files this response to defendants' motion is in support of his §1983 claims of false arrest, malicious prosecution and denial of a fair trial against defendants Roman, Gutierrez and Quinones.  Plaintiff also requests this Court exercise its supplemental jurisdiction over the state law claim of malicious prosecution against Roman, Gutierrez and Quinones and the City of New York through respondeat superior.  Plaintiff concedes all remaining claims against defendant Montagano and the City of New York.

## STATEMENT OF FACTS

Mr. Grant is a 6'4" tall black male who walks with a significant limp after being struck by a car more than a decade ago. Ex. 1 Pl Dep at 18:21-19:2; 33:23-34:2.   At the time of his arrest, he was 58 years old.  Ex. 1 Pl Dep at 18:1-2.  On September 3, 2013, he was sitting on the front stoop of the home he has lived in for twenty five years when officers surrounded, searched and handcuffed him.  He spent the next eight months incarcerated on bail he could not afford. Def. Ex. A AC ¶28, 30  Finally, the Kings County District Attorney's Office moved to dismiss all the charges against him because the only evidence linking him to the crime was unreliable and all other evidence demonstrated his innocence.  Def Ex. W Transcript.

On August 27, 2013, at approximately 2:45AM, the victim was walking on Evergreen Ave. when she noticed someone walking close behind her.  Def 56.1 ¶1.   She ran a few blocks

but when she stopped the man caught up and threw her to the ground.  Def Ex. I EG DD5.  She

was able to stop the attack, with the help of a witness yelling from a nearby window, and escape.

Def Ex. I EG DD5.  The attacker took her cell phone and ran off.  She returned home where she

and her boyfriend called 911.  Def. Rule 56.1 ¶2.

Later the same day, the victim was interviewed by Detective Gutierrez.  The victim

described her attacker in detail; he was a black male, 5'6" to 5'8", 30 to 40 years old with large

deformed teeth.  He was wearing a hooded sweatshirt, black sweat pants and white socks with a

colored stripe around them.  Def. Rule 56.1 ¶3; Def. Ex. I EG DD5.

Over the next few days, detectives Roman, Gutierrez and Quinones investigated this

crime.  Def. 56.1 ¶4.  Detective Roman met with the victim and gathered her clothing and

backpack for DNA testing.  Def. Ex. J Roman 8-28 DD5.  Detective Quinones canvassed for

potential video surveillance at several locations and viewed actual footage of the attacker

following the victim.  Ex. 7 NQ DD5.  Quinones also spoke with the victim to confirm what she

had been wearing during the attack.  Detective Roman generated and distributed wanted posters

that contained a sketch of the attacker drawn with the victim's input.  Ex. 4 Roman Dep 89-91.

Detectives Roman and Gutierrez canvassed the area of the crime with the victim. Ex. 8 EG 8-27

DD5.

On September 3, at **10AM**, Detectives Roman and Gutierrez were on a canvass in the

vicinity of the crime (without the victim) when they spoke to a homeless woman.  Def. Ex. K EG

DD5.  The detectives asked the woman if she recognized anyone fitting the description of a **tall**

male black, thin build, a bit muscular who might frequent the area.  Def. Ex. K Gutierrez DD5.

The woman said that could be Phil, pointed out 11 Stanhope St, received a few dollars from the

detectives and left the area.  Def. Ex. K.; Ex. 2 Gutierrez Dep at 41:20-42:4.  Detective Gutierrez

then asked Officer Mathers to run a check on 11 Stanhope St.  Def. Ex. K. Gutierrez DD5.  This "complete work-up" of 11 Stanhope includes names of tenants as well as complaint reports and 911 calls from the building.  Ex. 3 Mathers Dep 41:8-42:3.

At **1PM**, Detective Mathers generated a photo array that contained Philip Grant's photo.  Def. Ex. L Mathers DD5.  That photo array was shown to the victim at **1:20PM** and she failed to identify him.  Rule 56.1 ¶10; Ex. 5 Viewing Report.  After showing the victim plaintiff's photo, Detective Roman and Gutierrez brought her to the scene of the crime and again asked her to detail where the attack happened.  Ex. 9 EG 9-3 DD5.

At **1:45PM**, Detective Mathers, who earlier in the day had done a full work up on 11 Stanhope, called Detective Gutierrez from Stanhope between Evergreen and Bushwick Ave. (the block that contains 11 Stanhope) and instructed her to bring the victim there.  Ex. K. EG DD5.  The victim was in the car when Gutierrez received the phone call and the victim was still in the car when Gutierrez told Roman to drive to Stanhope St.  Ex. 4 Roman Dep at106:6-9.  Detective Roman immediately drove the victim there and claims the victim identified plaintiff while he was outside 11 Stanhope St.  Rule 56.1 ¶13.  Detective Gutierrez and Detective Mathers, although at 11 Stanhope St., do not remember the actual identification.  Ex. 2 Gutierrez Dep p.44:8-13; 45:6-20; Ex. 3 Mathers Dep at 51:14-52:7.

At the precinct, Plaintiff was interrogated by Detectives Roman and Gutierrez.  Rule 56.1 ¶15.  The officers repeatedly told plaintiff that he had committed an attempted rape and that they had video showing him following the victim.  Ex. 1 Pl Dep 90:4-14.  He was shown the video of the perpetrator and the victim on the officer's cell phone.  Ex. 1 Pl. Dep at 91:1-17.  Plaintiff was told to just confess to taking the phone and the sex offense charges would be dropped.  Ex. 1 Pl Dep at 103:12-104:10.  Plaintiff denied his involvement in the crime but did tell officers that he

was a victim of a crime approximately a week earlier.  He explained that he had been chased by two men but retreated into his home.  Def  Ex. R Pl Stmt.  Detective Roman believed him but never checked for a police report about the incident and she doesn't know if any other officers did either.  Ex. 4 Roman Dep at 124:9-125:5.

After approximately an hour interrogation without getting any admissions from plaintiff, Detective Roman asked Detective Quinones to continue the interrogation.  Ex. 4 Roman Dep at 128:17-129:9; 130:16-22.  Detective Quinones tried several techniques to elicit a confession including telling a story about another case where she secured a man's freedom when she didn't believe his accuser's allegations.  Ex. 1 Pl Dep at 110:13-25.  Detective Quinones repeatedly told plaintiff to just say he could have seen the victim across the street.  Ex. 1 Pl. Dep at 100:13-18.  Plaintiff explained that it was daytime when he was running down the street but Quinones said "don't worry about that."  Ex. 1 Pl. Dep at 108:21-25.  Detective Quinones wrote a statement describing in some detail when plaintiff got into a confrontation with two guys then ran from them toward Evergreen and eventually to his house.  Def Ex. R Pl Stmt.  Included in the statement is one line that reads "that's when I pass the white girl."  Plaintiff signed the statement because, with Quinones' assurances that she believed in his innocence, he thought he would be able to go home.  Ex. 1 Pl Dep at 110:9-111:20.  Obviously, plaintiff was misled.

After plaintiff's arrest was processed, Assistant District Attorney Zipkin spoke to Detectives Roman and Quinones about the case.  Rule 56.1 ¶18, 21.  She received the statement written by Detective Quinones and signed by plaintiff.  Def. Ex. C Zipkin Dep 11:20-22.  She learned from them that the victim did not identify plaintiff in a photo array but did identify him at a show up.  Def. Rule 56.1 ¶19, 20.  She was also told by Detective Roman that several individuals in the neighborhood were shown the video and sketch of the perpetrator and

identified plaintiff.  Def. Ex. H Screening Sheet; Def. Ex. C Zipkin Dep at 13:7-23.  Plaintiff was

arraigned, bail was set at 25K and he was sent to Rikers Island.  Ex. 1 Pl Dep 119:2-13; Ex. 12

Arraignment Court File.

On July 25th, 2014, the District Attorney moved to dismiss the criminal charges against

plaintiff based on several factors, including "real differences in the description the complaining

witness gave as compared to the defendant's actual appearance", the video surveillance that

depicts a person without a pronounced limp, the difficulty with the identification procedure that

was done and the DNA results which did not match the plaintiff.  Def. Ex. W Transcript.

## ARGUMENT

### SUMMARY JUDGMENT IS NOT WARRANTED AS THERE ARE GENUINE ISSUES OF MATERIAL FACT TO BE DETERMINED AT TRIAL

Viewing the record as a whole and in the light most favorable to Mr. Grant, defendants

have failed to meet their burden under Rule 56.1.  Federal Rule of Civil Procedure 56 provides

that summary judgment is proper when "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law." Beard

v. Banks, 548 U.S. 521, 529 (2006)(internal quotations omitted).   "The burden of showing the

absence of any genuine dispute as to material facts rests on the party seeking summary

judgment." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).  The Court must

"construe the facts in the light most favorable to the nonmoving party" and "resolve all

ambiguities and draw all reasonable inference against the movant."  Gomez v. City of New York,

2016WL4411335 (E.D.N.Y. 2016)(citing Brod v. Omya, 653 F.3d 156, 164 (2d Cir. 2011).

"[O]n a motion for summary judgment…the question is always whether, after drawing all

reasonable inferences in favor of the non-moving party and making all credibility assessments in

his favor, there is sufficient evidence to permit a rational juror to find in his favor." <u>Jocks v. Tavernier</u>, 316 F.3d 128, 134 (2d Cir. 2003)(citing <u>McCarthy v. New York City Technical Coll.</u>, 202 F.3d 161, 167 (2d Cir.2000) (internal quotations omitted). " [A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." <u>Manganiello v. City of N.Y.</u>, 612 F.3d 149, 161 (2d Cir. 2010)(citing <u>Zellner v. Summerlin</u>, 494 F.3d 344, 370 (2d Cir. 2007).

## POINT ONE

### <u>A JUROR COULD RATIONALLY FIND THAT PLAINTIFF WAS SUBJECTED TO FALSE ARREST</u>

"A §1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures…is substantially the same as a claim for false arrest under New York law." <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir. 1996). To prevail on a cause of action alleging false arrest or false imprisonment under NY law, a plaintiff must prove (1) intentional confinement by the defendant, (2) of which the plaintiff was aware, (3) to which the plaintiff did not consent, and (4) which was not otherwise privileged. See <u>Broughton v. State of New York</u>, 37 N.Y.2d 451, 456 (1975); <u>Ali v. City of New York</u>, 122 A.D.3d 888, 890; <u>Williams v. City of New York</u>, 114 A.D.3d 852 (App. Div. 2d Dept 2014). There is no dispute that Mr. Grant was aware of his incarceration and he certainly didn't consent. The only disputed element is whether the arrest was privileged.

At the time defendant Roman and Gutierrez arrested Mr. Grant, there was one, and only one, piece of evidence linking him to the crime; a highly improper, suggestive and unreliable showup identification by the victim.

> Plaintiff: Other than the victim pointing him out, as you just described, was there any other corroborating evidence at the time of his arrest?
> Roman:  No.

Ex. 4 Roman Dep at 123:3-7.

A show up is when a witness views only one suspect as opposed to an array of photographs or individuals in a line up.  Defendants try to label the identification as a "point out" but it was a classic show up; the victim was in a police car, specifically brought to the location of plaintiff who was surrounded by officers.  Plaintiff was the only potential suspect viewed by the victim. Show ups are so inherently suggestive that courts have routinely found their admissibility to violate an accused's due process rights.   "It is well settled that pretrial show up identification procedures are permissible only if the suspects are found at or near the crime scene and can be viewed by the witness immediately, (See People v Riley, 70 NY2d 523), or where exigent circumstances require it (See People v Rivera, 22 NY2d 453, cert denied 395 US 964)."  People v. Matthews, 257 A.D.2d 635 (1999).  "Showup identifications 'are strongly disfavored…" Kirkland v. Conway, No. 10-CV-0097 MAT, 2011 WL 3047723, at *2 (W.D.N.Y. July 25, 2011). "Permitting the prosecutor to introduce evidence of a suggestive pretrial identification can only increase the risks of convicting the innocent in cases where it has the desired effect of contributing to a conviction."  People v. Adams, 53 N.Y.2d 241, 251 (1981).

The show up which led to the only piece of evidence against Mr. Grant was certainly not close in time as it was conducted one week after the underlying crime and was not because of an exigency.  The chain of events, which might otherwise excuse a showup, was broken.  To overcome the due process violation, the show ups must either be necessary because of an exigency or conducted in close geographic and temporal proximity to the crime.  See People v. Ortiz, 90 N.Y.2d 533 (1997); People v. Duuvon, 77 N.Y. 2d 541(1991).  Show ups have been justified when there is an "unbroken chain of events-crime, escape, pursuit, apprehension and identifications…" Duuvon, supra at 545.

Above and beyond the inherent suggestiveness of any show up procedure, defendants Roman and Gutierrez further exacerbated the risk of a misidentification by using additional suggestive features.  Most strikingly, the victim of this crime was shown a picture of Mr. Grant twenty minutes before the show up.  Def. 56.1 ¶10; Def. Ex. A AC ¶20.  Very soon after seeing his photograph, the victim was driven past Mr. Grant's home where he was sitting on the stoop surrounded by officers.  Ex. 1 Pl Dep at 48:1-20.  Even if an exigency or chain of events could provide a justification for this disfavored type of identification, the show up itself must also be conducted in a non-suggestive manner.  Ortiz, supra at 537-538.  Detectives Roman and Gutierrez know that such a combination, a photograph followed closely in time to a particularly suggestive show up, will lead to a mistaken identification and cannot be relied upon to establish probable cause.

Even the District Attorney, during the motion to dismiss the charges against Mr. Grant, acknowledged "there is some difficulty with the identification procedure that was done." Def. Ex. W Transcript at 3:10-11.  She explained that "the complainant identified the defendant in a point out …that was about half an hour after being shown a photo array with this defendant in that photo array, where she did not pick him out."  Def. Ex. W Transcript at 3:15-17.  In unequivocal language, the DA told the court, "So, she **only** picked him out at a point out **after** seeing the defendant in a photo array." (emphasis added).  Def. Ex. W Transcript at 4:25-5:1.  The court granted the motion to dismiss the charges in their entirety.  Rule 56.1 ¶29. "[E]vidence of a subsequent dismissal, acquittal or reversal on appeal would also be admissible to refute the affirmative defense of justification" for the arrest.  Broughton v. State, 37 N.Y.2d 451, 458 (1975).  This dismissal and the basis for it strongly supports plaintiff's position that probable cause did not exist at the time of his arrest.

8

Additional factors also contributed to this suggestive identification procedure and unreliable outcome.  After showing the victim the photo array which contained Mr. Grant's photo, Detective Gutierrez received a phone call from Detective Mathers to come to Stanhope Street.  Ex. 4 Roman Dep at 102:6-8.  Detective Gutierrez then directed Detective Roman to head toward 11 Stanhope.  Ex. 4 Roman Dep at 102:16-103:3.  The victim was in the car when Gutierrez received the phone call and the victim was still in the car when Gutierrez told Roman to drive to 11 Stanhope St.  Ex. 4 Roman Dep at 106:6-9.  Using common sense, a reasonable jury could find that the victim heard the conversation in the car and was aware that the detectives wanted her to see someone at 11 Stanhope St.  In addition, many police officers were in the immediate vicinity of Mr. Grant when the victim arrived in the backseat of a police car increasing the suggestiveness of the moment.  Ex. 1 Pl Dep at 57:23-58:5.

The victim did not pick Mr. Grant's photo in the array because he was not the man who attacked her.  But, the suggestive methods used by the defendants transformed that appropriate failure to identify an innocent man into a positive point out.  A defendant's right to due process of law includes the right not to be the object of suggestive police identification procedures that create a "substantial likelihood of irreparable misidentification."  Solomon v. Smith, 645 F.2d 1179, 1185 (2d Cir. 1981).  "This protection must encompass not only the right to avoid improper police methods that suggest the initial identification, but as well the right to avoid having suggestive methods transform a selection that was only tentative into one that is positively certain."  Id at 1185.

It is true, as defendants claim, that an identification of a perpetrator by a victim is often enough to establish probable cause.  But, this rule is not absolute.  Medina v. City of New York, 102 A.D.3d 101, 104 (App. Div 1st Dept. 2012).  The court must look to the "totality of the

circumstances" in deciding whether probable cause exists to effect an arrest. <u>Illinois v. Gates,</u> 462 U.S. 213, 233 (1983). "The question is whether the police are aware of "materially impeaching circumstances" or grounds for questioning the complainant's credibility". <u>Id</u>. (citing <u>People v. Gonzalez</u>, 138 A.D.2d 622, 623 (2d Dept. 1988)). In <u>Sital v. City of New York</u>, the Appellate Division denied defendants motion for summary judgment, even though there was an identification of the plaintiff by a witness, because "a rational jury could have found that there was no probable cause for plaintiff's arrest because the accusation from an identified citizen, which was the sole basis for the arrest, was not sufficiently reliable…[t]he identification of plaintiff was also arguably contradicted by physical evidence from the crime scene that was consistent with a conflicting statement of an independent eyewitness…" 60 A.D.3d 465, 466, (2009)( motion for reargument of motion for leave to appeal denied 13 N.Y.3d 903, 895 (2009)). Similarly, the identification here was not reliable and directly contradicted by the video evidence of the crime.

Finally, whether the victim actually identified plaintiff as he sat on his stoop relies entirely on the credibility of defendant officer Roman.  She is the only one who testified that the victim even made an identification.  Detective Roman claims that Detective Gutierrez was also in the car at the time of the identification and arrest, but Gutierrez remembers nothing about the identification by the victim or plaintiff's arrest.  Ex. 2 Gutierrez Depo at 44:8-13.

> Plaintiff: Did you conduct any canvasses with the victim in the car?
> Gutierrez: I don't remember.
> Plaintiff: Did the victim ever identify to you the person who attacked her?
> Gutierrez: I don't remember.

And later in her deposition she testified:
> Plaintiff: Do you know where Philip Grant was arrested?
> Gutierrez: I don't remember.
> Plaintiff: You mentioned that you reviewed DD5s this morning before coming for your
>       deposition.  Did you review a DD5 that describes the arrest of Philip Grant?

> Gutierrez: Is my name on it?
> Plaintiff: There is a DD5 marked as follow up number 28.  Do you remember reviewing that DD5 this morning?
> Gutierrez:  If my name is on it.
> Plaintiff: I'm going to show you that.  Its marked NYC 115, follow up 28.  It's a DD5 with your name at the bottom.  Take a look at that.  Just let me know if that actually refreshes your recollection about Philip Grant's arrest.
> Gutierrez: I'm sorry, it doesn't.

Ex. 2: Gutierrez Dep at 45:6-20.

Credibility becomes the focal point of a probable cause determination when the sole basis for an arrest is based on the testimony of one officer; an officer who lied to prosecutors about several other individuals identifying plaintiff.  Def Ex. C Zipkin Dep at 13:10; Ex. 4 Roman Dep at 72:6-11, 141:7-142:16.  It is well-settled that a district court may not make credibility determinations on a motion for summary judgment.  <u>Manganiello</u>, supra at161 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (quoting <u>Zellner v. Summerlin</u>, 494 F.3d 344, 370 (2d Cir.2007).  "If the credibility of the movant's witness is challenged by the opposing party and specific bases for possible impeachment are shown, summary judgment should be denied." <u>Sterling Nat'l Bank & Trust Co. v. Federated Dep't Stores, Inc</u>., 612 F.Supp. 144, 146 (S.D.N.Y.1985).

Even the basis for the officers' attention initially being steered toward Mr. Grant and 11 Stanhope St is based on a falsehood.  Detectives Roman and Gutierrez asked a woman on the street if she recognized a man fitting the description provided by the victim but then gave that woman a description that was **not** provided by the victim.  Def Ex. K EG DD5 9-4-13.  The victim described her attacker as 5'6" to 5'8".  Def. Rule 56.1 ¶3.  The detectives told the woman on the street the man was "tall".  Def Ex. K EG DD5 9-4-13.  A reasonable jury simply using common sense, would believe that it was the inaccurate part of the description, the "tall", that led

her to say "it could be Phil."  Mr. Grant is in fact very tall; he is 6'5".  Ex. 2 Gutierrez Dep at 46:21-25; Ex. 1 Pl Dep at 18:21-19:2.

　　This one and only piece of evidence that linked Mr. Grant to the crime for which he was arrested, standing alone, creates a question for the jury as to whether probable cause existed to arrest plaintiff.  But not only was the only evidence linking Mr. Grant to the crime tainted, there was voluminous evidence pointing to his innocence.  "When determining whether probable cause exists courts must consider those facts *available to the officer* at the time of the arrest and immediately before it...." Panetta v. Crowley,460 F.3d 388 (2d Cir. 2006) (quoting Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir.2002)).  An officer may **not** disregard plainly exculpatory evidence. Kerman v. City of New York, 261 F.3d 229, 241(2d Cir. 2001)(emphasis added) (citing Kuehl v. Burtis, 173 F.3d 646, 650 (8th Cir.1999).

　　First, and perhaps most shockingly, there was actual surveillance video of the attacker that exonerated plaintiff.  That video showed a man, with a hoody, following close behind the victim.  Ex. 4 Roman Dep at 77:10-12.  This attacker did not have a limp.  Def. Ex. W Transcript at 4:19-24.  Although it is impossible to make out the features of the attacker's face, his walk and his gait are undeniable.  The attacker did not have any difficulty walking.  Mr. Grant has an immediately noticeable limp from a 2009 car accident that rendered one leg shorter than the other.  Ex. 1 Pl Dep at 33:23-34:2. A limp that the officers must have noticed, or a reasonable jury could easily conclude must have noticed, from the moment they approached him on his stoop, when they escorted him to the police car, when they walked him through the precinct, when they brought him in to the interview room, when he was fingerprinted and when he was escorted out of the precinct.  Detective Roman testified that she did notice a limp, probably while she was arresting him at 11 Stanhope St.  Ex. 4 Roman Dep at 114:14-17.   The detectives

12

viewed the video before the arrest of plaintiff.  Detective Roman estimated that she watched the video more than five times before Mr. Grant's arrest.  Ex. 4 Roman Dep at 77:2-12. It was unmistakable evidence pointing to his innocence but was ignored by the defendants.  And, of course, not only did the video exonerate him; the victim herself never described her attacker as having a limp.  Ex. 4 Roman Dep at 61:15-17.

In addition to the exculpatory video surveillance, other factors known to the detectives negated any arguable probable cause.  The victim, during her initial interview with Detective Roman within hours of the attack, claimed her attacker had deformed teeth.  Ex. 4 Roman Dep at 61:2-6.  Mr. Grant does not have deformed teeth or any other facial abnormality.  Ex. 4 Roman Dep at 122:21-123:1.  The victim described her attacker as 5'6 to 5'8.  Def. 56.1 ¶3.  Mr. Grant is 6'5"; a sizeable difference.  Ex. 1 Pl Dep at 18:21-19:2.  The victim described her attacker as 30-40 years old.  Def. Rule 56.1 ¶3.  Mr. Grant was 58 at the time of the incident.  The victim met with a sketch artist, provided a description of her attacker and then confirmed the finished sketch looked like her attacker.  Ex. 4 Roman Dep at 90:5-16.  But, that sketch did not resemble Mr. Grant.

> Plaintiff: "In your opinion as a police officer for 25 years, did the sketch resemble Philip Grant?"
> Roman: "I don't think it did."

Ex. 4 Roman Dep at141:3-6.

That same sketch, which the victim confirmed resembled her attacker and Detective Roman confirmed did not resemble plaintiff, was shown to a nearby store owner.  The store owner told Detective Roman the image "looks like a bum who wears a black hooded sweatshirt and comes into his store in the mornings…the guy is 30 years of age or older and there is something wrong with his face.  Ex. 13 MR 9-1 DD5.

13

Identification of a suspect by the victim of a crime cannot and should not be the end of the analysis especially when it is patently unreliable and stands against many exculpatory factors known by the officers.  An officer cannot deliberately disregard facts know to him at the time of arrest which eliminate probable cause.  Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003). Plaintiff has presented significant evidence that will convince a jury that the defendant officers did not have probable cause to arrest him.   A jury must be given the opportunity to evaluate his false arrest claim.  Probable cause has been described as "facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty." Colon v. City of N.Y., 60 N.Y.2d 78, 82 (1983) (citing Hyman v New York Cent. R. R. Co., 240 NY 137, 143; Boose v City of Rochester, 71 AD2d 59, 67)(additional citations omitted).  A juror, like the DA, faced with an improper show up, video surveillance that clearly lacks a noticeable physical ailment, and a description that is so considerably different from Mr. Grant, will believe in plaintiff's innocence not his guilt.

## POINT TWO

<u>A JUROR COULD RATIONALLY FIND THAT PLAINTIFF WAS DENIED HIS RIGHT TO A FAIR TRIAL</u>

Plaintiff's denial of a fair trial claim should be heard by a jury because he has established a genuine issue of fact as to each element.  A person suffers a constitutional violation if an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result. Jovanovic v. City of N.Y., 486 F. App'x 149, 152 (2d Cir. 2012).  Probable cause to arrest is not a defense to the fair trial claim.  "To hold that police officers, having lawfully arrested a suspect, are then free to fabricate false confessions at will, would make a mockery of the notion

that Americans enjoy the protection of due process of the law and fundamental justice." <u>Ricciuti v. NYC Transit Authority</u>, 124 F.3d 123,130 (2d Cir. 1997).

A. <u>Fabrication of Evidence</u>

Fabrication of evidence can take several forms. Officers can lie about the actual existence of evidence. But, equally actionable, officers can also deliberately mislead prosecutors or omit facts that are material to the prosecution. "Information may be "false" if material omissions render an otherwise true statement false." <u>Morse v. Fusto</u>, 804 F.3d 538, 548 (2d Cir. 2015), <u>cert. denied,</u> 137 S. Ct. 126 (2016). The Morse court, relying on the decision in Manganiello, found no distinction between affirmative misstatements and omissions. <u>Id</u>.(citing <u>Manganiello v. City of N.Y.</u>, 612 F.3d 149 (2d Cir. 2010). "Manganiello does not suggest that deliberate omissions of material facts are qualitatively different from affirmative misstatements, or that omissions alone cannot support a successful section 1983 action for using fabricated evidence to deprive a plaintiff of his constitutional rights." <u>Id</u>.

In the light most favorable to plaintiff, a jury could reasonably determine that the defendant officers used both forms of fabrication to violate his due process rights. First, Detective Roman told the prosecutor, on the day of plaintiff's arrest, that she "showed the video and the sketch to several individuals in the neighborhood who stated they recognized the individual as the defendant." Def Ex. C Zipkin Dep at 13:10. That was a lie; not even one individual identified plaintiff as the person in the sketch or the video. Ex. 4 Roman Dep at141:11-142:11. Representing otherwise to the prosecutor is a complete fabrication. What the defendants did not tell the DA was the significant differences between the victim's description of her attacker and Mr. Grant's height, limp and no deformed teeth. Ex. 11 Grand Jury Synopsis; Def Ex. C Zipkin Dep.

In addition to forwarding patently false information regarding identifications that never took place, the defendant officers coerced statements from plaintiff and then misrepresented the meaning of those statements to prosecutors.  After his arrest, plaintiff was taken into a room to be interrogated by the defendant officers.  He was shown a video while officers berated him that it was him in the video.  Ex. 1 Pl Dep at 89:18-90:14.  The officers tried to coerce plaintiff to make admissions by offering deals, like "admit to stealing the phone, we'll take the sex charge off the record…and you'll just do a couple of months on Rikers Island."  Ex. 1 Pl Dep at 103: 23-25.  "He kept saying, well…he said you just going to be sitting on Rikers Island if you don't do this."  Ex. 1 Pl Dep at 106:10-13.  When defendant officers Roman and Gutierrez couldn't elicit a confession from an innocent man, they brought in detective Quinones to continue the interrogation.  Ex. 4 Roman Dep at 130:13-22.

That second interrogation, by Detective Quinones, led to a statement signed by plaintiff but handwritten by Detective Quinones.  Def Ex. R Pl Stmt.  Mr. Grant, at his deposition, described the many tactics used by Detective Quinones to coerce a statement and convince Mr. Grant to sign it.  Most significantly, Quinones told a story to plaintiff about a case between a husband and a wife.  The detective explained that even though the wife had made accusations about the husband, Quinones believed the husband and secured his release.  Ex. 1 Pl Dep at 110:14-20.   Defendant Quinones told plaintiff "And I'm going to make you go home if you put this…you write this down here and you can go home too."  Ex. 1 Pl Dep at 110:23-25.  And again, "[I] don't believe you did this.  And you're going to go home too.  Just write this here, and then just do that."  Ex. 1 Pl Dep at 111:16-19.

The NYS Court of Appeals has held that falsification of evidence can be inferred by testimony of a coerced statement whose contents are inconsistent with the actual crime evidence.

Torres v. Jones, 26 N.Y.23d 742 (2016).  In Torres, the plaintiff described an interrogation where officers insisted she admit guilt, promised to help if she would confess, and made plaintiff fear she would be imprisoned.  Id at 765.  "Clearly, this account of the detectives' interview with plaintiff, which must be credited on a summary judgment motion, established that plaintiff's confession was false, for Detective Santiago allegedly invented the entire contents of the confession herself, drafted the confession then used a combination of deceptive assurances and implicit threats to pressure plaintiff into signing the statements."  Id. at 766.  Similarly, Mr. Grant has created a triable issue by presenting evidence that the officers falsified evidence against him.  See Pizarro v. City of New York, 2015WL5719678 (E.D.N.Y. Sept 29, 2015)(holding that allegations that officers forced the plaintiff to confess and forwarded that information to prosecutors sufficiently alleges a denial of a fair trial claim).

That written statement was not only the result of coercion but also contained information the officers knew was false.  The statement written by Quinones essentially describes plaintiff's confrontation with two men.  Def Ex. R Pl Stmt.  After a verbal dispute, plaintiff and the men had a fist fight until plaintiff was able to get away and run to his home.  Within the description of this fight, Quinones wrote "when I was running on Evergreen Ave that's when I pass the white girl."  Def Ex. R Pl Stmt.   The defendants knew that this statement was not accurate.  First, what plaintiff actually said was that he could have passed this victim or anyone on the street while he was fleeing his attackers.  "[Quinones] said, couldn't-couldn't that lady that got assaulted had been on the block and you could have seen her when you was running down the block.  So, I said, I could have seen Hillary Clinton…anybody could have been on the block."  Ex. 1 Pl Dep at 100:13-18.  Second, plaintiff told Detective Quinones during the interrogation that it was daytime when he was being chased.  "I said, well, I—just—what happened to me happened in

the daytime.  She [Quinones] said, oh, don't worry about that.  Don't worry about that."  Ex. 1 Pl

Dep at 108:21-23.  Finally, Detective Quinones placed plaintiff at the scene of the crime by using

an incident that actually happened on August 25, not August 27 when the victim was attacked.

Ex. 10 8-25 Police Report.

      Drawing all reasonable inferences in plaintiff's favor, the arresting officers were aware of

the complaint report and 911 call that was made from 11 Stanhope because Detective Mathers

had done a complete work up on the location earlier that day.  Ex. 3 Mathers Dep at 41:8-42:3.

Plaintiff was chased on a different day and at a different time of day therefore he could not have

ran past the victim.  The defendants' desire to get a statement caused them to create a false

narrative that led, in part, to plaintiff's prosecution.   A jury could reasonably find that Defendant

Quinones hid this information from the prosecutor and produced a written statement she knew

was, at best, grossly inaccurate and, at worst, a blatant lie.  Evidence of an inaccurate report,

particularly at the summary judgment stage, is sufficient to support a denial of fair trial claim.

See Downing v. City of New York, 11CV4654 (2013 WL 5502867 at *7 EDNY Sept. 30, 2013);

Jocks v. Tavernier, 316 F.3d 128 (2d Cir. 2003)(finding that although there was not

overwhelming evidence of a falsified written statement the civil rights claim of fabrication of

evidence should have gone to the jury).

B.  Fabricated Evidence Likely to Influence the Jury

      The fabricated identification evidence, along with the inaccurate and false statements

attributed to plaintiff, are material to the charges for which plaintiff was incarcerated and

therefore would likely influence a jury's decision.  The statement "likely to influence a jury" has

been interpreted by courts in this circuit to only require "a showing ... that the [false] information

would likely influence the jury if it arrived at a jury."  Cook v. City of N.Y., No. 15CV6559

(ILG)(CLP), 2017 WL 1434493, at *12 (E.D.N.Y. Mar. 20, 2017)(citing Garnett v. Undercover

Officer C0039, No. 13 CV 7083, 2015 WL 1539044 (S.D.N.Y. Apr. 6, 2015).  This element of a

denial of a fair trial claim looks solely to the materiality of the fabricated evidence.   Soomro v.

City of N.Y., 174 F.Supp.3d 806, 816 (S.D.N.Y. 2016). A statement by plaintiff that he was at

the scene of the incident at the time of the incident is certainly material to the charges.

Individuals supposedly recognizing plaintiff in video surveillance as the perpetrator, even if not

ultimately admissible at trial, would directly influence the decisions made by the prosecutor and

decisions made by the presiding judge as to bail and pretrial motions.  "Because materiality and

causation are two distinct elements, and a denial of fair trial claim can accrue when fabricated

information is forwarded to the prosecution (with no jury trial at all), the fact that allegedly

fabricated evidence would be inadmissible at trial by itself is not a bar to the claim."  Id.

C.  Deprivation of Liberty

        By forwarding misleading statements to prosecutors, plaintiff suffered a deprivation of

liberty.  Plaintiff was incarcerated for approximately eight months; from his arrest through

arraignment and until bail was eventually reduced and paid in April 2014.  Def Ex. A AC ¶28,

¶30.  He had to appear in court even after his release until the matter was dismissed, on motion

of the DA, in July 2014.  Def Ex W Transcript.  To satisfy the deprivation of liberty element,

"[a] plaintiff need not show that he was convicted or that a trial took place." Gomez v. The City

of N.Y., 185 F. Supp. 3d 299, 302 (E.D.N.Y. 2016 (citing Johnson v. City of New York, 2010

WL 2771834, at *11 (E.D.N.Y. July 13, 2010) (citation omitted)).  The false and misleading

statements were referred to during his initial arraignment, when bail was set, and used at the

grand jury.  Ex. 11 Grand Jury Synopsis Sheet; Def Ex. H Screening Sheet; Ex 12 Arraignment

Court File.  ADA Zipkin, who initially received the case, had a copy of the written statement

throughout the process of drafting the charging documents and the accompanying notices for the arraignment.  Def Ex. C Zipkin Dep at 11:20-22.  The prosecuting district attorney also specifically references the statement when she dismissed the case eleven months after plaintiff's arrest and incarceration.  In support of her motion to dismiss the charges against Mr. Grant, the district attorney stated to the court "the defendant did make a statement in this case, which was initially thought to be connected to what happened…there actually was a police report generated two days before this accident (sic incident), where the defendant was the complaining witness, and that's what his statement had to do with, not this case."  Def Ex. W Transcript at 4:14-18.

**POINT THREE**

<u>A JUROR COULD RATIONALLY FIND THAT PLAINTIFF WAS SUBJECTED TO MALICIOUS PROSECUTION</u>

Under New York law, a claim for malicious prosecution has four elements: (1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice."  <u>Savino v. City of NY</u>, 331 F.35 63, 72 (2d Cir. 2003)(quoting <u>Colon v. City of NY</u>, 455 N.E.2d 1248, 1250 (1983)).  Under §1983, a malicious prosecution claim requires the additional showing that the plaintiff suffered a "post arraignment liberty restraint…" <u>Rohman v. N.Y.C. Transit Auth.</u>, 215 F.3d 208, 215 (2d Cir. 2000).  Because there is no dispute that the criminal action was terminated favorably when the District Attorney moved to dismiss all the charges, plaintiff will only address the remaining elements. Def  Ex. X Certificate of Disposition.

A. <u>Initiation or Continuation of the Proceeding</u>

Mr. Grant has satisfied the first element of his malicious prosecution claim because, without question, officers Quinones and Roman initiated the false charges against him.  Officer Roman was the arresting officer, both literally and according to the arrest reports and other police documents. Ex. 4 Roman Dep at 138:13-14; Def. Ex. O Arrest Report.  Detective

20

Quinones investigated the case between the time of the incident and plaintiff's arrest, conducted canvasses, viewed video surveillance, provided a description to Crime Stoppers, interviewed plaintiff, generated a written statement, demanded plaintiff sign it and forwarded it to prosecutors.  Def Rule 56.1 ¶4, 5, 16; Ex. 7 NQ 9-2 DD5.  Both Quinones and Roman spoke with the DA on the night of plaintiff's arrest.  Rule 56.1 ¶18, 21.  Quinones was also notified to testify before the Grand Jury, likely to authenticate the statement she wrote and was introduced to the Grand Jury.  Ex. 6 Witness Contact Sheet; Ex. 11 GJ Synopsis.

Defendants contend that the prosecutor initiated the charges against plaintiff thereby absolving defendants of any responsibility for their falsehoods.  This position, which has been undermined repeatedly by the courts, would essentially eliminate the malicious prosecution cause of action as it is always the prosecutor who technically initiates a prosecution in NY.  See Zahrey v. Coffey, 221 F.3d 342, 352 (2d Cir.2000) ("Even if the intervening decision-maker (such as a prosecutor, grand jury, or judge) is not misled or coerced, it is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty.").   "Although there is a presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding, an arresting officer may be held liable for malicious prosecution when a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors." Cameron v. City of New York, 598 F.3d 50, 64 (2d Cir. 2010); See Chimurenga v. City of New York, 45 F.Supp.2d 337, 343 (S.D.N.Y.1999)(when a police officer is accused of providing false information to a prosecutor that "influences a decision whether to prosecute, he may be held liable for malicious prosecution.").  "[G]enerally in malicious prosecution actions alleging that a

police officer provided false information to a prosecutor, what prosecutors do subsequently has no effect whatsoever on the police officer's initial, potentially tortious behavior." Cameron, supra at 63. "The prosecutor's actions do not supersede the complaining officer's actions; they only determine whether the officer's actions come to fruition—that is, whether the officer committed the tort of malicious prosecution, or merely attempted to prosecute maliciously." Cameron, supra at 65.

      In light of the false and misleading information provided to the prosecutor, and discussed in greater detail above, a jury could reasonably find that Officers Roman and Quinones initiated and continued a criminal action against plaintiff. Officer Roman told ADA Zipkin that several individuals identified Mr. Grant from the sketch and video surveillance. Def Ex. C Zipkin Dep at 13:7-23. In reality, no one identified Mr. Grant from the sketch or video. Ex. 4 Roman Dep at 72:6-11; 141:7-142:16. Officer Quinones relayed damaging statements, that plaintiff denies making, to the prosecutor that placed plaintiff at the scene of the crime; specifically that plaintiff claimed he ran passed the victim on the street. Def Ex. R Pl Stmt. As discussed above in the context of the fair trial claim, the defendants also used coercion to convince plaintiff to sign a statement written by detective Quinones that misrepresented his statements and contained falsehoods. Ex. 1 Pl Dep at 111:16-19; 100:13-18. A police officer may be found to have initiated a criminal proceeding by withholding material exculpatory evidence from the prosecutor, or knowingly creating false information that created the basis for the prosecution. Stukes v. City of N.Y., No. 13-CV-6166 NGG VVP, 2015 WL 1246542, at *9 (E.D.N.Y. Mar. 17, 2015).

B.  Lack of Probable Cause

Defendants lacked probable cause to arrest and charge plaintiff.  In the context of a false arrest or malicious prosecution claim, "[p]robable cause consists of such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe [claimant] guilty" Colon v. City of New York, 60 N.Y.2d 78, 82 (1983).  The lack of probable cause has been discussed at length in the false arrest context above.  Although a malicious prosecution and false arrest claim do not always involve the same probable cause analysis, in this claim the factors are essentially the same.

Defendants correctly note, an indictment by a grand jury creates a presumption of probable cause.  But, "[t]hat presumption may be rebutted ... by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." Manganiello, 612 F.3d at 162 (internal quotation marks omitted) (quoting Savino, 331 F.3d at 72); See also McClellan v. Smith, 439 F.3d 137, 146 (2d Cir.2006) ("[T]he presumption of probable cause created by the grand jury indictment ... is rebuttable, and may be overcome by evidence establishing that the police witnesses have not made a complete and full statement of facts, that they have misrepresented or falsified evidence, or otherwise acted in bad faith." (alteration, citation and internal quotation marks omitted)).  "Providing the District Attorney with 'false information or manufactured evidence' that influences the decision to prosecute generally constitutes bad faith sufficient to rebut the presumption."  Celestin v. City of New York, 581 F.Supp.2d 420 (E.D.N.Y. 2008).

Defendants Roman and Quinones created false and misleading statements and attributed them to plaintiff; statements that place plaintiff at the scene of the incident at the time of the incident.  These statements were used at the Grand Jury proceeding against plaintiff.  Ex. 11 GJ

Synopsis.  The defendants also lied to the DA by claiming that several individuals in the neighborhood recognized the individual in the sketch and video surveillance as the defendant. Def Ex. C Zipkin Dep at 13:10.  Drastically different physical descriptions, most notably Mr. Grant's pronounced limp that clearly does not appear on the video of the actual perpetrator, were left out.  Def. Ex. W Transcript at 4:19-24.  Finally, plaintiff has produced evidence that the victim of this crime was shown a photograph of plaintiff, which she did not identify, minutes before being brought to his house by the defendant officers to make an extremely coercive and suggestive identification.  Def. 56.1 ¶10; Def. Ex. A AC ¶20.  The Grand Jury hears the victim's identification of the plaintiff but never hears the suggestiveness that brought her to that unreliable conclusion.  It is only these tainted pieces of evidence, the unreliable identification and fabricated statements, which led to the indictment.  There is no other evidence.  Under such circumstances, the plaintiff has met his burden of overcoming the presumption of probable cause through false and manufactured evidence.

C. <u>Malice</u>

The Second Circuit has held that where there is a disputed issue of fact as to whether probable cause existed, summary judgment on the malice requirement is inappropriate.  <u>Douglas v. City of N.Y</u>., 595 F. Supp. 2d 333, 342–43 (S.D.N.Y. 2009)(citing <u>Ricciuti</u>, 124 F.3d at 131 (holding that "lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment"); <u>Rounseville v. Zahl</u>, 13 F.3d 625,631 (2d Cir 1994) (holding that "our conclusion that the lack of probable cause presents a jury question likewise suggests that the existence of malice cannot be resolved through summary judgment"); accord <u>Chimurenga</u>, 45 F.Supp.2d at 343 ("Where, as here, there is a triable issue as to probable cause, there will almost always be a triable issue as to malice....").   The New York Court of Appeals

has similarly held that "…[w]hile lack of probable cause to institute a criminal proceeding and proof of actual malice are independent and indispensable elements of a malicious prosecution action, the absence of probable cause does bear on the malice issue," and "probable cause to initiate a criminal proceeding may be so totally lacking as to reasonably permit an inference that the proceeding was maliciously instituted." Torres v. Jones, 26 N.Y.3d 742, 761–62 (2016) (citing Martin v. City of Albany, 42 N.Y.2d 13, 17 (1977)).

Plaintiff has established a triable issue as to whether probable cause existed to prosecute him for crimes he did not commit. "…[E]ven if the jury at a trial could, or likely would, decline to draw inferences favorable to the plaintiff on issues of probable cause and malice, the court on a summary judgment motion must indulge all available inferences of the absence of probable cause and the existence of malice." Torres, supra at 763. Because alleged probable cause to believe Mr. Grant committed the crimes for which he was charged existed solely based on the per se suggestive and improper show up identification, false statements about other identifications that did not in fact take place, and statements that were attributed to plaintiff that he disputes, malice could easily and properly be inferred by the jury. Malice is also evident when were in possession of, but chose to ignore, clear exculpatory evidence that eviscerated any potential basis for arrest and prosecution, including the plaintiff's height, age, pronounced limp (that was missing from the video of the actual attacker) and lack of a facial deformity described by the victim.

**POINT FOUR**

<u>DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY</u>

The defendants violated plaintiff's constitutional rights when they arrested and maliciously prosecuted him without probable cause. His right to be free from an arrest and

prosecution without probable is clearly established; in fact it is the backbone of the 4th Amendment.  Cook v. Sheldon, 41 F.3d 73, 78 (2d Cir. 1994)(holding that "[i]t is now far too late in our constitutional history to deny that a person has a clearly established right not to be arrested without probable cause").  At the summary judgment stage, the burden rests solely on the defendants to prove they are entitled to qualified immunity as a matter of law.  They have failed to meet that burden.  To grant qualified immunity at this stage, this Court would have to "weigh the evidence and reach factual inferences contrary to [plaintiff's] competent evidence" and thereby neglect the "fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the non moving party."  Tolan v. Cotton, 134 S.Ct. 1861, 1866 (2014).

The essential inquiry in determining whether qualified immunity is available to an officer accused of false arrest is whether it was objectively reasonable for the officer to conclude that probable cause existed.  Jenkins v. City of N.Y., 478 F.3d 76, 87 (2d Cir. 2007)(citing Anderson, 483 U.S. at 644; Saucier, 533 U.S. at 207 (section 1983 claims under the Fourth Amendment are evaluated for objective reasonableness)).   If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer.  Id.  In other words, "[a]rguable" probable cause should not be misunderstood to mean "almost" probable cause."  Id.

Given the facts of this case, as described above and viewed in the light most favorable to the plaintiff, it would be objectively unreasonable for an officer to believe he had probable cause to arrest plaintiff.  "[I]f 'it is obvious that no reasonably competent officer' would have taken such action, that officer will not be immune."  Dancy v. McGinley, 843 F.3d 93, 106 (2d Cir. 2016) (citing Malley, 475 U.S.335,341 (1986).  Qualified immunity does not shield "the plainly

26

incompetent or those who knowingly violate the law.' " Id.(citing Mullenix v. Luna, 136 S.Ct.

305, 308(2015).  With only a suggestive show up minutes after the victim was shown a photo of

the plaintiff and mounds of exculpatory evidence, "no officer of reasonable competence could

have made the same choice [to arrest] in similar circumstances."  Lennon v. Miller, 66 F.3d 416,

420–21 (2d Cir. 1995).

Qualified immunity should not be determined at the summary judgment stage when the

reasonableness of the officers' conduct requires fact finding by a jury. See Olivera v. Mayer, 23

F.3d 642, 649-50 (2d Cir.1994).  The jury, here, must decide several issues of fact and whether,

based on those factual decisions, probable cause existed.  For example, plaintiff credibly

contends that the victim was aware she was being brought to 11 Stanhope St. to view a suspect

because she was in the car when the detective received the call. Ex 4 Roman Dep at 106:6-9.  If

the jury believes she knew, there is additional evidence that the show up was so unreliable it

cannot support probable cause. Similarly, only a jury can decide if Mr. Grant made the

comments that were in the statement written by Detective Quinones and forwarded to

prosecutors.  Plaintiff contends that the officers knew the incident when he was being chased

could not have put him at the scene of the crime because a police report was generated showing

the chase happened on a completely different night. Ex. 10: 8-25 Police Report.  Mr. Grant told

Detective Quinones he was chased during the daytime but the incident happened at night.  Ex. 1

Pl Dep at 108:21-23.  These factual issues, among others discussed above, and all reasonable

inferences that can be drawn from them, require a denial of summary judgment and a

presentation of the case to a jury.  "Where…the applicability of qualified immunity 'turns on the

facts known by the public officials at the time of the challenged conduct,' and there is a genuine

dispute with respect to the existence of such facts or the defendants' knowledge thereof, the issue

of qualified immunity is subject to determination by the factfinder at trial." Polk v. D.C., 121 F. Supp. 2d 56, 65 (D.D.C. 2000); See Olivera, supra (finding that the lower court should have let a jury resolve factual disputes and then then determine whether it was objectively reasonable for the defendants to believe that they were acting within the bounds of the law when they detained the plaintiffs).

Similarly, the officers are not entitled to qualified immunity as to the right to a fair trial claim. The evidence supports a jury finding that false information, specifically that several people identified plaintiff, was forwarded to the DA in connection with the prosecution of plaintiff. Def Ex. C Zipkin Dep at 13:7-23; Ex. 4 Roman Dep at141:11-142:11. Because "fabrication of evidence violate[s] a 'clearly established constitutional right,' " defendant "officers [are] not entitled to qualified immunity." Gomez v. City of N.Y., 2017 WL 1034690, at *8 (E.D.N.Y. Mar. 16, 2017)(quoting Ricciuti, 124 F.3d at 130).

## CONCLUSION

Mr. Grant should not have been arrested or charged. He should not have spent eight long months in a jail for a crime he did not commit. The defendants want to hide behind this fallacy that a victim's supposed identification, no matter how troubling, improper and unreliable, always creates probable cause. Not only do the defendants ask this Court to create an unsurmountable rule that identifications equal probable cause, but also they ask this Court to ignore the overwhelming evidence of innocence that was known at the time of Mr. Grant's arrest. Plaintiff asks this Court to view the totality of the evidence and all the inferences to be drawn in plaintiff's favor, and deny defendant's motion as to defendants Roman, Gutierrez and Quinones.

Dated July 11, 2017                    Respectfully,

Nicole Bellina
Stoll, Glickman & Bellina, LLP
Attorneys for Plaintiff
475 Atlantic Ave. Fl.3
Brooklyn, NY 11217

cc: ACC Melanie Speight (BY ECF)

29